TEXOLA DRILLING COMPANY, a Corporation, Plaintiff In Error,

v.

The OKLAHOMA CORPORATION COMMISSION, Reford Bond, Chairman, Ray O. Weems and Ray C. Jones, Members of the Corporation Commission of the State of Oklahoma, Sac & Fox Prue Sand Unit and Wilcox Oil Company, a Corporation, Unit Operator, Defendants In Error.

No. 36299.

Supreme Court of Oklahoma.

March 22, 1955.

Richard W. Fowler, Oklahoma City, and Arthur H. Dolman, Dallas, Texas, Richardson, Cochran, Dudley, Fowler & Rucks, Oklahoma City, and Blakeley, Walker, Dolman, Shoptaw & Wilson, Dallas, Texas, of counsel, for plaintiff in error.

Glenn R. Davis, Tulsa, T. Murray Robinson, Oklahoma City, for Sac and Fox Prue Sand Unit and Wilcox Oil Co., a corp., Unit Operator, Floyd Green, Oklahoma City, Conservation Atty., for Corporation Commission, for defendants in error.

BLACKBIRD, Justice.

Plaintiff in error, Texola Drilling Company, hereinafter referred to merely as Texola, and the defendant in error, Wilcox Oil Company, hereinafter referred to as Wilcox, are, and, at all times material to the present controversy, have been, owners of oil and gas leases in what is known as the Sac & Fox Field of Lincoln County, Oklahoma.

In January, 1952, Wilcox commenced Cause CD No. 3654, in the State Corporation Commission by filing its application, under the provisions of the Twenty-Third Legislature's Senate Bill No. 203, chap. 3a, Okla.Sess.Laws 1951, Tit. 52 O.S.1951 § 287.1, et seq., for an order creating unitized management, operation and further development of an area of said field overlying the Prue Sand in order to conduct water flooding operations therein. Wilcox owned the majority of the leases while Texola owned only one lease, which covered 80 acres, in the area sought to be unitized. Texola objected to the formula of distribution prescribed in the plan of unitization proposed by the applicant, but after a full hearing on said application and said objection, the Commission, by its Order No. 25912, entered May 29, 1952, granted the application and created what was called the "Sac & Fox Prue Sand Unit" in accord with the unitization plan submitted by Wilcox. Said Order further stated (in par. 8 thereof):

"The Commission retains continuing jurisdiction over said unit for the purpose of amending, modifying and interpreting the terms and provisions of this order and the Plan Of Unitization of said Unit."

No appeal was taken from said order and the Sac & Fox Prue Field Unit was activated and began its functioning. One of the first acts of its operators committee was to select Wilcox as unit operator. Then, in accordance with Art. V of the unitization plan, said committee caused an inventory to be made of the lease and operating equipment of the various lessees in the unit and determined what items of such equipment were necessary to be taken over by the unit for its operations. After so doing, the committee then determined the value or cost to the unit that should be placed on said equipment and apportioned such total cost among the several lessees on the basis of the unitization plan's schedule of their individual participation in the unit, and credited each lessee with its proper portion of such inventory value, all as provided by the unitization plan. As a predicate for this, the committee determined that all of the various lessees' pipe necessary for the unit's use in producing and developing the unitized area should be given an inventory value of 60% of the price of similar new pipe.

When Texola was debited with its portion of the unit's equipment inventory, or capital investment, and credited with the inventory price of its equipment contribution thereto, it was found that the debit was greater than the credit by $30,003.73; and it was billed therefor. After the unit

had taken over the operation of the unitized area, and, during approximately a year and a half of such operation, during which it incurred a substantial debt for the installation and operation of the water flooding process, Texola's share of the unit's expenses grew to a total of $31,161.99, its share of the operating and *subsequent* capital investment expense (as distinguished from the *original* capital investment) being $5,147, while its credit for production from the single oil well on its lease during said period applied on said debt by Wilcox, as unit operator, (in accordance with the unitization plan provision pertaining thereto), was only $3,988.74. After Texola refused to pay this $31,161.99, the unit instituted Cause No. 15783, in the District Court of Lincoln County, to collect same and therein prayed for foreclosure of a lien against Texola's interest in the unit which said plaintiff claimed on the basis of the unitization plan or so-called "operator's agreement" and Tit. 52 O.S.1951 § 287.8. Without waiting for a trial of said law suit, Texola filed in the original unitization proceedings (the Corporation Commission's Cause No. CD 3654, supra), its application for a further or additional order interpreting or modifying its previous order No. 25912, or the plan of unitization thereby put into effect, "if necessary, in order to resolve and eliminate all doubt as to the meaning and intent thereof with respect to the matters involved herein." The principal matter "involved" and complained of both in the application and the hearing thereafter held by the Commission thereon, was that the unit's operating committee and unit operator had allegedly interpreted the provisions of the cited law and the unitization plan (apparently sanctioned by the Commission's original order) as entitling said unit to a money judgment for Texola's above-described debt to it and as giving it the right to foreclose its lien therefor by court action, when, in reality, the unit has no such legal right. In this connection, Texola's position is that the only lien, chap. 3a, O.S.Laws 1951, Senate Bill No. 203, supra, gives the unit in a situation like this, is a "passive" one; that there is no

provision of law for its foreclosure, and the only way it can be satisfied is out of Texola's portion of the unit's oil runs. Texola's other complaint is that of the unit's use of only 60% of its new price as the formula for determining the inventory value of the various lessees' stock of pipe in computing each lessee's contribution to the capital assets or investment of the unit. Texola's claim is that this criterion of such value was an arbitrary discrimination against it, since the pipe in its well was almost new at the time the inventory was taken. Texola maintains its pipe should have been given a higher value than the old pipe of other lessees included in this capital investment. After hearing the testimony of one witness, and the statements and arguments of the respective counsel for Texola, the unit, and/or unit operator, and the Corporation Commission, the Commission entered its order finding that Texola is receiving "the same treatment" under the provisions of Order No. 25912, as other lessees in the unit, and denying Texola's application for a modification of said order. From said order, Texola has lodged the present appeal.

The afore-described reasons which Texola urged for its attempt to get the Commission to modify Order No. 25912, have been decreased by one in number because of the unit's concession in this appeal that it seeks no money judgment by reason of the cause or causes of action it has alleged in the Lincoln County suit (Cause No. 15783, supra).

This still leaves for determination the question of whether or not the Commission should have modified its said previous order or the plan of unitization thereby put into effect by in some manner showing that it was not within the order's contemplation that the lien the unit was to have for debts of the unit's several lessees, such as the one described herein, be a lien against said debtor's leasehold or entire interest in the unit, but was to be a lien only against its share of the unit's oil and gas production which could not be "foreclosed" (as that term is usually understood) by court action such as the unit is attempting in the pending Lincoln County

408

suit. Nor does the unit's concession eliminate the question as to whether the Commission should have compelled the unit to give Texola a larger credit for its pipe in the unit's capital investment inventory.

 In connection with the latter question, we find no cause for reversing the Commission's order. The testimony of Texola's sole witness shows that he was that company's representative on the operators committee and that he concurred in the committee's determination to fix 60% of the new price as the appraised value of all of the lessees' contributions of pipe to the unit's capital investment.

Nor do we believe the Commission erred in refusing to modify Order No. 25912, on the other grounds that Texola urges. While neither Tit. 52 O.S.1951 § 287.8, supra, nor its predecessor, sec. 9, chap. 3b, S.L.1945, 52 O.S.A. § 286.9, contains any specific provision for the foreclosure of the lien therein prescribed for the unit, the fact that Art. VI of the unitization plan, to which Texola is not claimed to have ever given any written consent, merely provided that such lien might be foreclosed, impelled no action on the part of the Corporation Commission. If the Commission had ordered deletion of said provision from the plan or had indicated, in some other manner, by a supplemental order, that it was not its intention that such lien should be foreclosed, such order could not affect the unit's right to do so, if the applicable law gives it such right. Nor would it prevent the unit from exercising such legal right (if any exists) in the pending district court action in Lincoln County. As the Corporation Commission lacks the jurisdiction of the District Court to enforce such a right by ordering foreclosure, see Southwestern Light & Power Co. v. Elk City, 188 Okl. 540, 111 P.2d 820, its expression of an opinion as to the existence of such right either by a so-called "interpretation", or modification of its previous order, or otherwise, would have served no useful purpose. That body could no more have granted Texola an adequate remedy against its real complaint, i. e., that of having the pending District Court action prosecuted against it on the causes therein alleged, than the order could have changed the law with reference to such cause or causes of action. And a similar view must prevail with reference to the unit operators' inclusion in those asserted causes of action, of Texola's unpaid portion of the initial capital investment inventory. If the Corporation Commission had made a supplemental order and included therein a decree or provision that such debt was not a legal basis for such asserted lien, that would not have made it so; and such order would have no effect on the Lincoln County action if the law provided the contrary.

In view of the above considerations, we think the Corporation Commission properly refused the supplemental order Texola sought. The order appealed from is therefore affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, DAVISON, HALLEY and JACKSON, JJ., concur.