In the Matter of the Application of PEP-PERS REFINING COMPANY for an order permitting an additional well to be drilled in each drilling and spacing unit established for the Wilcox Sand Common Source of Supply by Order No. 25155, as amended by Order No. 26037.

**No. 36607.**

Supreme Court of Oklahoma.

May 3, 1955.

James B. Diggs, Jr., and Booth Kellough, Tulsa, for plaintiff in error.

Floyd Green, Conservation Atty., Ferrill Rogers, Asst. Conservation Atty., Oklahoma City, for Corporation Commission.

Barth P. Walker, Oklahoma City, for Peppers Refining Co.

BLACKBIRD, Justice.

This appeal involves the effect and application of an opinion promulgated by this Court on April 13, 1954, in an appeal docketed under No. 36054, styled Application of Peppers Refining Co., reported at 272 P.2d 416, 420, in which this court reversed Order No. 26994, entered by the State Corporation Commission in its Cause CD No. 4328. Therein we held that on the basis of the evidence in said cause and the principles properly applicable thereto, as announced in said opinion, the applicant, Peppers Refining Company, was entitled, on the application it had filed in said cause, to relief from the injury to its correlative rights by the loss it was proved to be suffer-

ing by drainage from its C. Teuscher lease resulting from operation and/or production of wells on adjoining leases belonging to the lessees referred to therein as "Harper-Turner" whose drilling by said previous orders of the Commission (enumerated in said opinion) had been made "exceptions" to the drilling pattern in effect in the Peavine Field of Oklahoma County, Oklahoma.

For the sake of clarity and continuity, we will again refer (as we did in the cited opinion) to the State Corporation Commission, the above-mentioned lessees, Gulf Oil Corporation, and certain other lessees in the well-spaced area of said field (depicted by maps in the former opinion) merely as "The Commission", "Peppers", "Harper-Turner", and "Gulf."

In said opinion, we called attention to the fact, by quoting therefrom, that the "Application" and "Amended Application" Peppers filed in the case (Case CD No. 4328, supra) not only prayed for an order authorizing the drilling of an additional well to the Wilcox sand (which would make two such wells on each 20-acre unit, similar in effect to 10-acre spacing) but also prayed for " 'such further relief * * * as is just, reasonable and equitable in the premises.'" And, to clarify the conclusion we reached in said opinion, we expressly stated that we did not "attempt to prescribe" the form of "protection" that the Commission, upon a reconsideration of the case, was to afford Peppers from Harper-Turner's drainage of oil from under its C. Teuscher Lease. We pointed out, however, in the parenthesis immediately following said statement, that: "(The Conservation Act specifically gives the Commission adequately broad power to grant such protection in more than one way or form)", and concluded: "We merely hold that the pleadings and proof herein were sufficient to invoke, and entitle Peppers to, the exercise of that power." In so speaking, this Court contemplated that after setting aside the order we therein reversed, and, upon reconsideration of the case in the light of the views therein expressed (note that we did not purport to specify whether such reconsideration or rehearing should be based upon the evidence already introduced or whether the Commis-

sion should allow an entirely new or supplemental trial or hearing in which the introduction of new or additional evidence would be permitted) the Commission might, after due deliberation, and in the event of finding that the evidence so warranted, enter a proper order designed to direct or accomplish one or more of the following things: The drilling of an additional well on each 20-acre unit in the theretofore unitized area (under the first part of the prayer of the pleadings of Peppers, or any individual or group of parties pleading and proving justification for such an order), or, under the last and quoted part of Peppers' prayer for "such further relief * * * as is just, reasonable, and equitable in the premises" grant Peppers (and any other parties whose rights could properly be considered by the Commission, which said rights we made no effort to define or to finally determine) whatever proper relief it found necessary under the power given it by Tit. 52 O.S.1951 § 87.1(b) providing:

That the Commission, upon granting "such exception as may be reasonably necessary where it is shown * * * and the Commission finds that any such spacing unit is located on the edge of a pool and adjacent to a producing unit, or for some other reason that to require the drilling of a well at the prescribed location on such spacing unit would be inequitable or unreasonable. Whenever such an exception is granted, the Commission shall adjust the allowable production for said spacing unit and *take such other action as may be necessary to protect the rights of interested parties.*" (Emphasis ours.)

When the Commission had by the aforesaid previous orders made "exception" wells of some of those on Harper-Turner leases adjoining Peppers' C. Teuscher Lease, it had not, as was later made to appear (see the facts set forth in the cited opinion) following the mandate of the above-quoted statute, taken *all* action necessary to *protect the rights* of Peppers, which was certainly an "interested" party because (if for no other reason) of the location of its C. Teuscher Lease, and which was definitely proved in said proceedings to be suffering loss as a result of such lack of protection.

In Gulf's present appeal, a sequel, as already indicated, to the Peppers Refining Co. case, supra, it is revealed that about the time that the mandate of this Court, together with a copy of our opinion in that case, went to the Corporation Commission and was there filed and spread of record in its Cause CD No. 4328, supra, Gulf filed therein its Motion requesting the Commission to enter an order that would effect compliance with said opinion, and therein setting forth, among others, the following allegations, and prayer:

"9. That under the proper interpretation of the opinion of the Supreme Court of Oklahoma and in compliance with the mandate issued thereunder in Case No. 36054, this Commission should enter its order permitting Peppers Refining Company to drill a well to the Wilcox Sand common source of supply in the center of SE¼ SW¼ SE¼ of Section 2, Township 14 North, Range 2 West, Oklahoma County, Oklahoma, as an offset to the Harper-Turner well described above, or grant to Peppers Refining Company such other relief to which it may be entitled in order to protect its correlative rights without imposing 10-acre spacing over the entire Wilcox Peavine Pool.

"Wherefore, Gulf Oil Corporation respectfully moves the Commission to set this matter for hearing and at the conclusion thereof enter its order permitting Peppers Refining Company to drill a well to the Wilcox Sand common source of supply in the center of SE¼ SW¼ SE¼ of Section 2, Township 14 North, Range 2 West, Oklahoma County, Oklahoma, or to grant to Peppers Refining Company such other relief to which it may be entitled in order to protect its correlative rights *without authorizing the drilling of an additional well in each of the drilling and spacing units prescribed for the Wilcox Sand in the Peavine Field,* Oklahoma County, Oklahoma, in compliance with the opinion of the Supreme Court of Oklahoma

in Case No. 36054 and the mandate issued thereunder." (Emphasis ours.) A few days later and without, as far as the record shows, any further trial or hearing, or appearance by Peppers or any of the other parties to the action except Gulf, the Commission entered in said Cause its so-called "Report" and "Order" No. 28877, which, after reciting that the mandate of this Court had been spread of record, as aforesaid, "and there remains nothing to be done except to grant Peppers' Application", filed an order denying Gulf's Motion "for the reason that the only legal way to comply with the Mandate of the Supreme Court is to grant" Peppers' application. By said order the Commission summarily modified its previous spacing order (No. 25155) to provide for the drilling of an additional well to the Wilcox Sand in *each* unit of the *entire* spaced area of the Peavine Field.

 In its present appeal from said order, Gulf takes the position that, in so doing, the Commission misunderstood our opinion in appeal No. 36054, supra, and mistakenly regarded it as a mandate to order the drilling of an additional well on each 20-acre spacing unit in the field's spaced area, rather than recognizing the opinion in its true character as a decision only that, on the basis of its application, Peppers was entitled to *some* relief, under the Commission's statutory powers, from the effects of the drainage from its C. Teuscher Lease caused by Harper-Turner's operation of "exception" wells on their adjoining leases. Gulf's position appears substantially correct. As hereinbefore indicated, and, as a reading and proper analysis of the opinion in controversy should clearly demonstrate, it is not a direction to the Commission to order an additional well drilled on each unit in the spaced area, to the exclusion of other ways or forms of prospectively protecting Peppers' rights and ending its loss from that lease's continued drainage. We distinctly refrained from attempting to dictate to the Commission how it should solve the problem, see Sterling Refining Co. v. Walker, 165 Okl. 45, 25 P.2d 312, or tell it which one or more of the various forms of relief, within its own proper prerogative, it should grant

Peppers, or any of the other litigants it found so entitled. As hereinbefore indicated, we confidently contemplated that upon further deliberation as to the matter, the Commission would exercise its own independent judgment as a competent tribunal especially experienced in such matters, to find the proper solution after a re-appraisal or new examination of any and all evidence pertinent thereto, and an exploration of its powers, in the light of the views announced in our opinion. The Commission's action since receipt of the mandate, as herein related, demonstrates that we expected too much. Some of the argument in the Commission's brief is apparently to the effect that in entering the order appealed from herein, it did nothing inconsistent with the court's expressions in the opinion in controversy, and that by therein ordering the drilling of an additional well on each of the area's 20-acre units, it has granted (at least in one of the ways open to it) the relief prayed for in Peppers' pleadings. This cannot be denied, but it is equally plain that, in so doing, the Commission was not exercising its own judgment pursuant to any application of our recorded views to the evidence, but that it was ordering that particular relief for Peppers because it (like some of the witnesses and attorneys demonstrated by certain of their statements previous to the former appeal) believed it *must*—because that was "the only legal way to comply with the Mandate of the Supreme Court * * *". We can come to no other conclusion than that said tribunal entered the Order it did merely because its members thought that was the kind of order our opinion in appeal No. 36054, supra, contemplated or because they thought it was the only kind of an order the Commission, under the statutes, could enter and at the same time comply with said opinion and its mandate. This conclusion is supported by the following statements appearing in its brief:

"In issuing the Order it did, the Commission could only interpret the Court's decision and mandate to mean that the Commission should do only that which it had power and authority to do under the Conservation Act. Nowhere in the

Conservation Act is there any specific reference to or express power and authority in the Commission to grant the kind of relief urged by Gulf. The only express authority and power the Commission has under that Act is to permit an additional well to be drilled on each drilling and spacing unit."

As will be seen, the above statement ignores or contradicts the hereinbefore quoted parenthetical statement from our opinion in the Peppers case, supra, whose basis our discussion herein attempts to "spell out" or point out, and more especially the part which calls the Commission's particular attention to its broad powers under Tit. 52 O.S.1951 § 87.1(b). We agree that said section does not specifically say that allowing one or more particular operators in a spaced area to drill "exception" or new or other wells (than those contemplated in the original spacing order and drilling pattern) to counterbalance the drilling of "exception" wells and to compensate him or them for drainage from their leases caused by such operations of his or their adjoining neighbors, is a form of relief indicated in the broad or general phrase "such other action" appearing in said section. But the Commission advances or cites no legal obstacle to such an interpretation except the above-quoted statement that there is no "specific reference" to any such power in the Conservation Act. However, we decline to say just what that phrase encompasses until in a given case the Commission has actually attempted to apply this provision upon its determination from the evidence and all of the pertinent facts and circumstances in the case that such action is, as the statute specifies: " * * * necessary to protect the rights of interested parties", and has so ordered, and the question is

properly before this court in an appeal from such order. It is patent that in the present instance the Commission has made no such determination. Nor does its "Report" and "Order" contain any finding or other indication of its determination that the allowance of the additional wells therein specified for the entire spaced area is necessary to protect the right of Peppers or any other interested party whose rights were a proper subject of said tribunal's consideration. In the absence of such determination, we can do nothing but reserve our opinion without entering the field of issuing advisory opinions on hypothetical judgments or orders. We therefore reverse the order appealed from herein and remand the case to the Commission for setting said order aside, and for any further and proper proceedings and/or deliberations necessary to the exercise of such judgment and the issuance of a proper order reflecting such action. Apparently Gulf does not seriously contend for, nor expect to obtain, herein, a review of the merits of said order as concerns the decree for additional drilling contained therein; and any attempt on our part to so review it now (if possible on the record before us) would neither be proper nor fair to the Commission in view of the fact that said order does not represent an independent or substantive determination by that body. In this connection see Sec. 20, Art. IX, Okla.Const., and the decisions in Anderson-Prichard Oil Co. v. Corp. Comm., 205 Okl. 672, 241 P.2d 363, 368, and Application of Little Nick Oil Co., 208 Okl. 695, 258 P.2d 1184, 1189.

Reversed and remanded.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON, ARNOLD, HALLEY and JACKSON, JJ., concur.