CHOCTAW GAS COMPANY, a Corporation, Plaintiff in Error,

v.

The CORPORATION COMMISSION OF The State of OKLAHOMA, Oklahoma Natural Gas Company, and The Gas Service Corporation, a Corporation, Defendants in Error.

No. 36637.

Supreme Court of Oklahoma.
March 27, 1956.

Dudley, Duvall & Dudley, Oklahoma City, for plaintiff in error.

Carlson, Lupardus, Matthews, Holliman & Huffman, by John S. Carlson, Tulsa, Robinson, Shipp, Robertson & Barnes, by T. Murray Robinson and Clyde H. Hale, Oklahoma City, for defendant in error, Oklahoma Nat. Gas Co.

Floyd Green, Oklahoma City, for defendant in error, the Corp. Commission of Okl.

Stamper & Dudley, by Joe Stamper, Antlers, and H. I. Aston, McAlester, for defendant in error, the Gas Service Corp.

BLACKBIRD, Justice.

This appeal involves an order of the Corporation Commission with reference to proration of gas from the Carney area of the Quinton Gas Field. As far as concerns our consideration of the issues herein, all gas from this common reservoir is produced by five wells belonging to Choctaw Gas Company, and almost sixty belonging to Oklahoma Natural Gas Company. The principal adversary parties will be hereinafter referred to as "Choctaw" and "Natural", respectively, while the Corporation Commission and the Gas Service Corporation, the other parties hereto, will be referred to merely as the "Commission" and "Service Corporation", respectively.

For more than the first fifteen years of production from the common source of gas supply referred to as the Carney area or field, no order of the Commission regulating said production was enforced. Thereafter, on October 21, 1947, the Commission, in its Cause CD No. 1729, entered its Order No. 20539, establishing a proration schedule and allocation formula for such production. Among other things, this order provided that each well in said reservoir should have allocated to it, a ratable proportion of the total amount of gas taken from the reservoir monthly, according to a prescribed allocation formula. The total amount of gas to be produced from said reservoir in any given month was to be determined by applying the allocation formula to the market demand for gas from said field for that month, which market demand, is determined by the Commission on the basis of so-called "nominations" by the producers in said field. These "nominations" are merely declarations by each producer showing the volume of gas it needs to produce through its wells in order to supply its market.

Order No. 20539 recognized that in the course of its operation some of the wells would produce more and some less than their allowable under said method of fixing allowables. This was referred to in the order as overproduction and/or "overage" and underproduction or "underage." It was contemplated therein that either or both Choctaw's and Natural's market for gas might call for a greater volume of gas than

the aggregate allowable of their wells under said order; and, sec. 7 thereof allowed any well to accumulate overage and underage equal to its largest current monthly allowable during the 12 months period immediately previous thereto. It was further therein provided, however, that when any well exceeded such overage, it should be immediately shut in by the operator, unless given permission by the Commission's Conservation Director to accumulate an overage of twice that amount. Said section further provided:

"If at any time after the effective date of this order any producer in the field shall file with the Director of Conservation a statement in writing that it as a purchaser is unable to purchase its market demand for gas in this field, because of the operations of the foregoing provisions of Section 7 of this order or if it as a producer is unable to produce or purchase the necessary amount of gas to supply the market demand of its purchaser of gas from this field, then the Director of Conservation may direct that all overages and underages in this field be held in abeyance for a period of not to exceed six months before the expiration of which period the Director of Conservation shall serve notice on all parties concerned, directing them to appear before the Commission and show cause why the Commission should not cancel overages or underages in such manner that the market demand for gas may be supplied from the field, or direct such other action that may be necessary for supplying the market demand in this field."

Thereafter a situation, such as contemplated in the above-quoted section, arose, when Choctaw's wells became materially overproduced and it could not, without continuing to overproduce its wells, supply its market demand under a contract it had to furnish Service Company gas. Upon becoming apprised of this situation, the Commission's Conservation Director directed that all overages and underages in the field be held in abeyance, and took the steps prescribed by sec. 7, supra, including the

filing of an application, dated April 2, 1948, to obtain a hearing and a determination by the Commission as to whether the overproduced wells should be shut in until their overproduction could be made up, or whether such overage should be cancelled to enable Choctaw to supply its market demand, or whether some further action should be taken to supply said demand. Appropriate appearances were made by both Natural and Choctaw and the latter filed a response to the Conservation Director's application alleging, among other things, that its wells' overages were due to Natural's decreasing its nominations for "takes" from the field, that Natural was in a position to supply it with sufficient gas, at a reasonable price, to meet its market demand, and that the Commission should order Natural to sell it gas accordingly, and that, if Natural failed to do so, proration of the field should be terminated. After an extended hearing, the Commission, on September 14, 1948, entered its order No. 21546, requiring Natural to permit Choctaw to connect its line to Natural's line near a certain well, and then sell Choctaw sufficient gas to supply its needs, at 4½¢ per MCF. In Oklahoma Natural Gas Co. v. Choctaw Gas Co., 205 Okl. 255, 236 P.2d 970, 972, this court reversed Order No. 21546, and held that such attempted forcing of Natural to sell its gas to Choctaw was "beyond the Commission's power as taking one company's property to give to the other." (For a more detailed statement of the factual background of this controversy, see the cited opinion). The proceedings, out of which the present appeal has arisen, were in the nature of a new trial had before the Commission after the mandate of the cited opinion was spread of record there. On the theory that our general reversal of said order, and its vacation by the Commission, left undetermined the issues raised and joined by the parties' pleadings and the Conservation Director's application previously filed in Cause CD 1729, on April 2, 1948, as aforesaid, Natural thereupon filed a motion in said cause praying the Commission to enter a new order therein which would direct Choctaw's wells to be shut in until said company had conformed with the Commission's pre-

vious orders, or that the Commission "make such order * *. * as may otherwise be just and proper.";

Thereafter Choctaw filed a supplement to its original response to the Conservation Director's application, and, in this new pleading alleged in substance, among other things, that as long as the system of proration in said field prescribed by Order No. 20539, was in force and effect Natural could, by continuing its low nominations for gas "takes" from the field, keep the field's allowable low, which in turn would compel Choctaw to keep overproducing its wells in order to supply its continued market demand. Choctaw further alleged that by thus being able to control the monthly allowable which the Commission fixed for the field, Natural, had the power, within itself, to prorate the field. On the basis of these allegations, and others, including the further one that Natural could not be prevented from exercising such power over the field's proration as long as Order No. 20539 remained in effect, Choctaw prayed that said order be vacated and set aside.

After extended hearings on all matters raised by the above-mentioned allegations and others, the Commission entered its Report and Order No. 28838, directing that Choctaw's five wells be shut in until such time as its overproduction, now charged to them, is made up. In the present appeal, Choctaw asks that this order be reviewed and reversed, or ordered vacated.

Most of Choctaw's brief consists of a review of the evidence in this case, without showing how it justifies reversal of the order appealed from. Under "Point I" of said brief, it apparently tries merely to show that it has followed correct procedure in its proceedings for vacation of the Commission's previous Order No. 20539. Under its "Point II", it says that shutting in its wells, in compliance with said order, will ruin them and cause it to lose its market for gas. Under "Point III", it argues that Order No. 28838 is violative of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution and also violative of Secs. 2, 7, 23 and 24 of Art. II, of the Oklahoma Constitution. In its reply brief,

Choctaw adverts to the opinion of this Court in Oklahoma Natural Gas Co. v. Choctaw Gas Co., supra, and says it is out of harmony with Republic Nat. Gas Co. v. State, 198 Okl. 350, 180 P.2d 1009. Apparently, its counsel thinks Order No. 28838, which is the only adjudication involved here, is also out of harmony with the last cited case.

In its brief, Service Corporation advances for reversal of said order, the argument that it was based upon an erroneous finding that this court, in its opinion in Oklahoma Nat. Gas Co. v. Choctaw Gas Co., supra, had already ordered Choctaw's wells shut in; and that, by reason thereof, the Commission's hearings were useless and all the rest of Order No. 28838, was surplusage. It further argues that both Orders, Nos. 20539 and 21546, made proration of the Carney area dependent upon an interchange of gas between Oklahoma Natural and Choctaw; and that, when this court, in Oklahoma Nat. Gas Co. v. Choctaw Gas Co., supra, reversed Order No. 21546, requiring Natural's sale of gas to Choctaw, that left the area without any compulsory proration formula or system. It is also argued that since the previous monthly allowables of the various wells in the field had been computed, under said orders, from monthly allowables for the entire field, which latter, Oklahoma Natural has been able to virtually control (as aforesaid) said orders were an unconstitutional delegation to Oklahoma Natural of the Commission's proration powers. Service Company's final argument is that the Commission's authority to prorate is based upon waste and, since, in the order appealed from, it did not find that waste would result if Choctaw's wells were not shut in, the Commission exceeded its power by making said "shut in" order, which is therefore void.

None of the above-described arguments have substantial merit. Choctaw's argument under its "Point II" that shutting in its wells would ruin them is supported by the opinion of at least one of its witnesses, but it is contradicted by at least one witness for Natural. There may, therefore, be said to be a conflict in the evi-

dence on that matter. Be that as it may, however, there was no serious contradiction, if any, of the evidence that no waste of gas in the reservoir in the Carney area will result from Choctaw's wells being shut in, and that the other wells penetrating that reservoir will adequately produce all of the gas, or gas reserve, that remains in said reservoir. Aside from this, one of the two important purposes of proration, and aspects of the Corporation Commission's power under our proration statutes, there is the more incidental consideration that there was no evidence to show that the cost of drilling Choctaw's wells had not been repaid. In fact, the evidence showing the volume of gas that has been produced and sold from them, and the price for which it has been sold, indicates that their cost has probably been repaid many times over. On the basis of the evidence, it is not demonstrated to our satisfaction that Choctaw has any property right in these wells, or the equipment it maintains to produce and market their gas, that it is the duty of the Corporation Commission to protect. Nor is it demonstrated that Choctaw's market for the gas is a property right or interest that it is the Corporation Commission's duty to protect or preserve exclusively for Choctaw. On the other hand, there is no serious or effective refutation of Natural's argument that had Choctaw's wells not been shut in, they would, as they have for a long time, be producing gas which belongs to Natural and others who have correlative rights to the gas in the reservoir. And, in this uncontradicted fact lies the cardinal weakness of the arguments of both Choctaw and Service Corporation. To protect such correlative rights, in addition to preventing waste, is one of the fundamental powers of the Corporation Commission under our proration statutes. See Cabot Carbon Co. v. Phillips Petroleum Co., Okl., 287 P.2d 675, 678, 679. And these two fundamental purposes of the exercise of the Commission's powers in proration matters are interrelated, for, if the State, through this or some other agency, could not protect such rights, and each owner of a portion of the gas in a natural reservoir was left to protect his own, we would have resort to the wasteful drilling practices and races of the preproration days. See Panhandle Eastern Pipe Line Co. v. Corporation Comm., Okl., 285 P.2d 847, 852. This explains why there is no merit to Service Corporation's argument that, because Order No. 28838 contained no specific finding that the shutting in of Choctaw's wells was necessary to prevent waste, it is void. The 12th paragraph of the Commission's finding, however, shows that this was necessary to prevent further encroachment upon Natural's correlative rights and further appropriation by Choctaw of Natural's rightful share of the gas in the Carney area. This court has previously demonstrated that despite Tit. 52 O.S.1951 § 231, the Commission can prevent this. See, Panhandle Eastern Pipe Line Co. v. Corporation Comm., supra, 285 P.2d at page 853.

Here Choctaw owns leases on 52 of the 2067 productive acres of land that the Commission, as early as March 2, 1948, in its Order No. 20995, found (and the parties hereto apparently agreed) overlays the common reservoir, or source of supply, of the Carney area; and there is yet no dispute of these facts, or of the parties' relative ratable or proportionate interest in the reservoir's gas thereby indicated. On this productive acreage basis, Choctaw has been entitled to only 52/2067, or slightly less than 1/40th or .0251+ of the reservoir's gas. (It was never demonstrated that Choctaw's rightful share of said gas is substantially greater than thus indicated). Accepting as correct, the highest estimate in the record of the gas reserve left in said reservoir, namely: 29,000 MCF, and adding to that the 88,000 MCF undisputedly already produced therefrom, it will be seen that that initial total gas content of the reservoir was 117,000 MCF. Based on the undisputed documentary proof, including the Commission's Reports (introduced as Exhibits 46, 117, inclusive) showing the "Actual Runs" of Choctaw's 5 wells, they have produced more than 5,799 MCF between November, 1933, (when the Commission's first order for ratable taking in the field was entered) and November, 1953.

Based on Choctaw's portion of the productive acreage in the field, its rightful share of the gas produced during that period was .0256+ of 117,000 MCF, or slightly more than 2,936 MCF. It will thus be seen that on a productive acreage basis, Choctaw's wells have already produced almost twice its rightful share of the reservoir's gas. This salient fact cannot be overlooked or minimized even if we were to adopt the theory urged by Choctaw and Service Corporation with reference to the contemplated (as distinguished from the actual) operation of Orders No. 20535 and 25146; and we were to ignore the so-called "overages" and "underages" computed and accumulated under the more or less technical and specialized formula therein prescribed and/or put into force, and were to accept as true, and as unfair and inequitable (contrary to the Commission's findings) said parties' version of Oklahoma Natural's role in bringing about the Choctaw wells' "overages." For this reason, none of such arguments is impressive.

■■■■ We think Service Corporation's arguments that we should direct vacation of the present order because of its counsel's version of the effect of our reversal of Order No. 21546, in Oklahoma Natural Gas Co. v. Choctaw Gas Co., supra, upon the status of the proceedings at that time, and/or upon the status of proration in the field at that time, and/or its effect upon the proceedings of the Corporation Commission in the further proceedings out of which the present appeal arose, all beg the question. The validity of the present order does not depend on the opinion that the Commission expressed in the 9th paragraph of its findings as to the effect of our decision in that case, in view of its findings in paragraphs 12 and 23 thereof, both of which latter are supported by ample, if not overwhelming, evidence. A long-established rule of appellate review in this jurisdiction is that for an alleged erroneous finding to work a reversal of a judgment, it must appear that said judgment would not be sufficiently supported if said finding was different or absent. See, Mortgage Bond Co. v. Stephens, 181 Okl. 419, 74 P.2d 361, and 5 C.J.S., Appeal and Error, § 1787. This rule has

been applied to appeals from Corporation Commission orders, as well as court judgments, see, In re Intrastate Exp. Rates, 40 Okl. 237, 138 P. 382, 391, though often routinely and without specific mention. See, Panhandle Eastern Pipe Line Co. v. Corporation Commission, supra; Texola Drilling Co. v. Oklahoma Corporation Commission, Okl., 281 P.2d 405; Application of Little Nick Oil Co., 208 Okl. 695, 258 P.2d 1184. The present case differs from Application of Peppers Refining Co., Okl., 283 P.2d 533, where the Commission's order was entered solely as a result of a misinterpretation of our previous opinion and without either findings or evidence to support it.

■■■■ Nor can there be any doubt of the Commission's authority to shut in Choctaw's wells since its findings, supported by the evidence, are to the effect that proration of the Carney area is necessary, and that such shutting in is necessary to enforce it. Cities Service Gas Co. v. Peerless Oil & Gas Co., 203 Okl. 35, 220 P.2d 279; Id., 340 U.S. 179, 71 S.Ct. 215, 95 L.Ed. 190. As said in Phillips Pet. Co. v. State of Okl., 340 U.S. 190, 71 S.Ct. 221, 222, 95 L.Ed. 204:

"In a field which constitutes a common reservoir of gas, the Commission must be able to regulate the operations of all producers or there is little point in regulating any."

Our opinion in Oklahoma Natural Gas Co. v. Choctaw Gas Co., supra, is not out of harmony with Republic Natural Gas Co. v. State, supra. The Commission's order in the last cited case was justifiable on grounds of preventing waste and protecting the owners' correlative rights in the gas reservoir there involved; while the order involved in Oklahoma Natural Gas Co. v. Choctaw Gas Co., was not so justified in so far as it purported to compel Natural to sell Choctaw gas.

As hereinbefore indicated, we have carefully examined the extensive record in this case and from said examination have found that the order appealed from is amply supported by sufficient, substantial evidence. In view of this, and our finding that none of the arguments urged for that purpose

are sufficient cause for reversing the order, the same is hereby affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON, HALLEY, JACKSON and HUNT, JJ., concur.