Troy O. BISHOP, Virginia L. Bishop, H. E. Parrott, and Herbert E. Parrott, as Executor of the Estate of Laura Parrott, deceased, Plaintiffs in Error,

v.

CORPORATION COMMISSION of the State of Oklahoma, Republic Natural Gas Company, a corporation, and Harper Oil Company, a corporation, Defendants in Error.

Nos. 39554, 39721.

Supreme Court of Oklahoma.

May 7, 1963.

Rehearing Denied Sept. 10, 1963.

Application for Leave to File Second Petition Denied July 28, 1964.

Young, Young & Young, Sapulpa, Joe Young, Chandler, by Glenn A. Young, Sapulpa, for plaintiffs in error.

Ferrill H. Rogers, Oklahoma City, for the Commission of Okl.

T. Murray Robinson, Oklahoma City, for Proponents of the Unit, Republic Natural Gas Co. and Harper Oil Co., defendants in error.

IRWIN, Justice.

Defendants in error, Harper Oil Company and Republic Natural Gas Co., hereinafter referred to as Applicants, petition-

ed the State Corporation Commission in Cause No. 13910, for an order creating the East Happy Hills Unit for the purpose of the unitized management, operation and further development of the Skinner Sand common source of supply. Attached to the petition was their proposed plan of unitization which included the percentage participation or allocation of each tract in the unit production.

Plaintiffs in error, hereinafter referred to as Protestants, who are owners of an undivided mineral interest included in the proposed unit, objected to the proposed plan of unitization. After extended hearings and on January 31, 1961, the Corporation Commission entered its Order No. 44,408, approving the plan of unitization as proposed by the Applicants. This plan of unitization was to become effective at the end of the time allowed by law for an appeal if no appeal was taken; or if an appeal was taken, then upon the final determination of such appeal.

On February 6, 1961, Protestants filed their Notice of Appeal from the Commission's Order No. 44,408, and this appeal is docketed as Case No. 39,554, in this Court.

On March 21, 1961, Applicants filed with the Corporation Commission Case No. 14818, which was an application to amend the plan of unitization as provided in Order No. 44,408, for the purpose of making the plan effective immediately. A hearing was had and on April 25, 1961, the Corporation Commission in Order No. 45,180, found that in Order No. 44,408, it had retained continuous jurisdiction to amend or modify the terms of such order and that Protestants did not file a supersedeas bond nor did they request a stay of the effectiveness of Order No. 44,408. Order No. 45,180, which amended Order No. 44,408, stated that "this order shall become effective immediately".

Protestants perfected an appeal from the Commission's Order No. 45,180, which made the plan of unitization effective immediately, and such appeal is docketed in this Court as Case No. 39,721, and the same is consolidated with Case No. 39,554.

One of Protestants' reasons for objecting to the plan of unitization and appealing from the order creating the unit is that such plan did not allocate to Tract No. 9, under which they owned an undivided mineral interest, a sufficient percentage of the total production of the unit. In this connection, it is urged that the percentage of the total unit production allocated to their unit is unreasonable, unjust, arbitrary and discriminatory and the order allocating to each tract a certain percentage of the unit production is not supported by substantial evidence.

In considering Protestants' contentions that the order of the Commission did not allocate to their tract a sufficient percentage of the total unit production, we should be mindful of the applicable rule of law when this Court reviews an order of the Corporation Commission. The Commission has a wide discretion in the performance of its duties and this Court may not substitute its judgment on disputed questions of fact for that of the Commission, unless the findings of the Commission are not supported by the law and substantial evidence. See Shell Oil Company v. Davidor & Davidor, Okl., 315 P.2d 259. Following this principle of law we will review the evidence to determine if the findings and the orders of the Commission are supported by the law and substantial evidence.

The plan of unitization and the order creating the unit listed the tracts in the unit, described the location of each tract and allocated the total production of the unit to the separate tracts. The unit is located in Sections 11 and 12, T 12N, R 3E, Lincoln County, and comprised 1140 acres. Protestants own an undivided mineral interest in Tract No. 9, which is the NE ¼ of Sec. 12, and is the northeast tract in the unit. Tract No. 9 was allocated 7.1886 percent of the total production by the Commission's order which was the same percentage allocation submitted and proposed by the Applicants.

Protestants urge that Tract No. 9 was entitled to more than 7.1886 percent of the

total production for the reason that there was an influx of salt water in the southwestern portion of the unit and that the sand was wet and that no deductions were made or consideration given to the water encroachment; and, that the percentage allocation was based on Applicants' evidence that there was 19 feet of productive sand underlying the well on Tract No. 9 when all the substantial evidence shows there was actually 31 feet of productive sand underlying said well.

The petroleum engineer, who prepared the allocation formula which was approved by the Commission, testified for the Applicants. He stated that this is a depletion type reservoir with an associated gas cap and that the producing energy is supplied by gas; that he found no indication of a water drive in the productive sand in the unit or an influx of water from an aquifer and that no deductions were made or consideration given in determining the allocation formula because of water encroachments in the southwest area of the unit. The managing officer for one of the Applicants stated that salt water was being produced from some of the wells in the southwestern part of the unit but that the amount of salt water production was insignificant and that no deductions should be made as to percentage allocations for any tract because of any water encroachment.

Applicants' testimony was that the well on Tract No. 9 had 19 feet of productive sand, and that the allocation formula was based upon these figures. Applicants also submitted how the number of feet of productive sand under the other wells was determined and how the allocation was made.

Protestants offered evidence that there was a water influx in the southwestern part of the unit and that such water encroachment should have been considered in determining the percentage allocation formula for each tract; and, that there as 31 feet of productive sand underlying the well on Tract No. 9, and not 19 feet of productive sand as Applicants had contended. In the opinion of Protestants' expert witness,

Tract No. 9 should be entitled to 18.8 percent of the total unit production and not 7.1886 percent as provided in the Commission's order of unitization and as proposed by Applicants.

It is evident that the Commission's findings and order creating the unit and establishing the percentage allocation formula for the separate tracts in the unit were based upon the evidence of the Applicants as the Commission's findings and order adopted in toto the proposed plan submitted by the Applicants.

However, in the hearing of Applicants' application to amend the order so that the plan of unitization would become effective immediately, additional evidence was offered by the Applicants. A consulting petroleum engineer testified for Applicants and his answer to whether there was evidence of any water, he stated, "Yes, on the southwest flank of the field there are two wells that are making considerable water". He recommended that certain wells be converted to imput wells which would conserve the energy and prevent waste. He testified by injecting 1560 barrels of water per day into the imput wells, the further influx of the oil into the gas cap would be stopped. He testified that "there is a gas cap in the northeast portion of the reservoir which comprises a sizeable proportion of the total reservoir. Gas is being produced out of this portion of the reservoir; oil and gas and water is being produced out of the balance of the reservoir. As a consequence of this gas production, and a weak water influx, driving oil from the southwest to the northeast into the gas cap, there is occurring at this time a sizeable loss of oil in the gas cap". According to his computation, some 27,000 barrels of oil that cannot be recovered have already migrated into this gas cap and oil is continuing to migrate at approximately 10,000 barrels per month. He stated that the well on Tract No. 9 has 31 feet of productive sand body and that he would recommend that water be injected into said well at a rate of 30 barrels per day per foot.

The above evidence, which was submitted by the Applicants, was in harmony with and substantiated the evidence of Protestants at the original hearing as to the water encroachment in the southwestern portion of the unit and the number of feet of productive sand underlying the well on Tract No. 9, and was not in harmony with the evidence submitted by Applicants in the original hearing. It is apparent that Applicants' proposed percentage allocation formula which was approved by the Commission was based upon geological interpretations which subsequent operations disclosed were not the correct geological interpretations.

Although the Commission's order creating the unit and establishing the percentage allocation formula for each tract may have been based upon substantial evidence when the order was entered, to affirm such order would necessitate a disregard of the evidence submitted by the Applicants which subsequent operations of the unit disclosed.

▌ Inasmuch as both of the appeals before us relate to the identical subject matter, i. e., the creation of the East Happy Hills Unit, and were consolidated, we are privileged to consider all the evidence in determining whether the Commission's order is supported by substantial evidence.

▌ From an examination of the entire record, we can only conclude that the Commission's Order No. 44,408, being docketed in this Court as Case No. 39,554, which created the East Happy Hills Unit is not supported by substantial evidence and the same is reversed.

Since the Commission's Order No. 45,180, being docketed in this Court on appeal as Case No. 39,721, amends Commission's Order No. 44,408, Case No. 39,721, it should be and the same is reversed.

Although Protestants have submitted several other specifications of error, we find it unnecessary to consider them in the two cases on appeal at this time.

Orders No. 44,408 and 45,180 of the State Corporation Commission are reversed.