REPUBLIC NATURAL GAS CO. v. STATE et al.

No. 32123.    Feb. 18, 1947.

As Corrected on Denial of Rehearing March 25, 1947.

*180 P. 2d 1009.*

Rainey, Flynn, Green & Anderson, of Oklahoma City, and Robert C. Foulston and George Siefkin, both of Wichita, Kan. (Ross Rizley, of Guymon, of counsel), for plaintiff in error.

Richardson, Shartel, Cochran & Pruet, of Oklahoma City, and Floyd Green, of Oklahoma City, Attorney for Corporation Commission, for defendants in error.

Earl Foster, of Oklahoma City, amicus curiae.

OSBORN, J. This is an appeal by Republic Natural Gas Company from an order of the State Corporation Commission, entered on January 10, 1945, requiring Republic to take gas ratably from a well of Peerless Oil & Gas Company in the Hugoton gas field in Texas county. In this court on such appeal Republic assails the validity of the order, and of the statutes upon which it is based, upon various grounds hereinafter more fully stated.

Peerless, in this court, moves to dismiss the appeal on the ground that Republic, by making a tender for sale of gas produced from its leases in the Hugoton field, has recognized the validity of the statutes and the previous orders made by the commission governing the producing and taking of gas from the Hugoton field and is, therefore, estopped now to deny the right of the commission to make the present order, and for the further reason that no motion for a new trial was filed before the Corporation Commission within three days after the order involved in this appeal was entered.

We see nothing in the tender of gas made by Republic which estops or precludes it from asserting the invalidity of the order appealed from, or of the statute, if it may be so construed as to authorize such order. In the previous orders of the commission governing the production and taking of gas from the Hugoton field, the amount of gas to be produced from the wells in that field to supply the market demand was fixed and allocated with as much certainty as the commission was able to do so, but neither expressly nor by inference was any requirement made upon Republic to take gas from any wells except its own. Recognition of the commission's right to make such orders and the production and sale of its gas thereunder in no way recognizes the right of the commission to require it to take gas from the wells of the other producers.

Nor was the filing of a motion for new trial necessary to preserve to Republic the right of appeal. Holzbierlein v. State, 197 Okla. 509, 172 P. 2d 1007.

The motion to dismiss is denied.

Proceeding now to consider the appeal on its merits, we briefly summarize the facts established by the evidence adduced before the commission, upon which its finding and order were predicated. From the evidence it appears that the Hugoton gas field, not yet fully defined, covers a territory some 150 miles in length and 50 miles in width, extending from the southern part of the State of Kansas into Oklahoma and Texas, and possibly into Colorado and New Mexico; that practically all of Texas county, Okla., is embraced within the area of the field, which produces enormous quantities of gas, far in excess of the market demand therefor; that at the time of the hearing before the commission some 100 wells had been drilled into said field in Oklahoma, and that numerous wells had been drilled into it in the southern part of Kansas; that Republic had drilled some 92 wells in the Kansas portion of the field and some 38 in the Oklahoma portion, and that additional wells were being drilled into the field in considerable numbers; that

Republic, under contract with two pipe lines supplying gas for public consumption, one of which is within the State of Oklahoma, had constructed a pipe line gathering system of large size extending from its main outlet in the State of Kansas into Texas county, Okla., whereby a portion of the production from its wells was transported to its markets in Oklahoma and Kansas; that by its principal contract it was required to maintain an open flow of gas production of more than four times in excess of the daily needs of the purchaser, and that Republic had available a supply of gas largely in excess of such requirement. It further appeared that there was no connection through stock ownership or otherwise between Republic and the pipe line outlets purchasing its gas. Republic drilled its first wells in Texas county, Okla., in 1937, and has since that time been continuously engaged in the drilling of additional wells and in extending and enlarging its pipe line system to take care of the production from such wells. It has at no time held itself out as, or purported to be, a common purchaser or common carrier of gas, nor has it transported gas from any wells other than its own, except that under request of the Petroleum Administrator for War, it carried in its pipe lines, free of charge, gas from certain producing wells which the Petroleum Administrator required it to transport as a prerequisite to permitting it to drill additional wells of its own. It also transports the gas of its royalty owners under its leases, which require it to pay as royalty 1/8 of the proceeds of the sale of gas.

The well of Peerless is located in section 14, township 6 north, range 15 east, in the northern part of Texas county. Under previous orders of the commission only one well could be drilled upon each section. The Peerless well was completed as a producer on April 28, 1944, and produces gas in commercial quantities. It is almost surrounded by wells owned and operated by Republic which, according to the testimony of all the expert witnesses who testified on

the subject, are draining from under the Peerless lease large quantities of gas which could be produced from it, and for which Peerless and its royalty owners would receive payment if such gas could be marketed by Peerless. For the gas so drained from under the Peerless lease by the surrounding wells Peerless and its royalty owners, of course, receive nothing, the revenue derived therefrom, which is not susceptible of definite ascertainment or apportionment, being received by Republic and the royalty owners upon whose lease its surrounding wells are located. From the evidence it appears that all of the gas production from the wells in the Hugoton field in Oklahoma is from the same common source of supply, and that to a certain extent the lease upon which the Peerless well is located is, therefore, drained by other wells in the field, but that such drainage is insignificant and inconsequential as compared to the drainage by the nearby wells of Republic, which are much closer to the Peerless well than any other wells in the field.

From the evidence it appears that the present needs of Republic do not require the full capacity of its pipe line gathering system, and that a line of said system eight inches in diameter crosses section 14, upon which the well of Peerless is located, a short distance from said well. It also appears that Republic does not take from its producing gas wells any gas in excess of its determined allowable, as fixed by the Corporation Commission.

The Corporation Commission, after a full hearing, found that Republic had drilled numerous wells in the Hugoton field in Oklahoma; that it had constructed pipe lines from these wells to its main pipe line, which main pipe line extended some 25 or 30 miles to a connection in Kansas, where it sold its gas to a common purchaser and common carrier of gas, and that it also sold a part of its gas to another common purchaser, the Cities Service Gas Company, at a point within the State of Oklahoma; that one of its gathering lines ran across the

land upon which the Peerless well was drilled, and that Republic had several wells on leases adjoining the land on which the Peerless well was drilled, which were draining gas from under the land covered by the Peerless lease, and that the production of natural gas in the Hugoton field was in excess of market demand.

The commission found that Republic was a common purchaser of natural gas in the Hugoton field; that it was a common carrier of natural gas in said field, and further found that its taking of gas from the Hugoton field was not for the purpose of developing a gas and oil field, or operating oil wells or for the purpose of its own domestic use, and that it was therefore its duty, under S. L. 1913, ch. 198, sec. 3 (52 O.S. 1941, §233), to take ratably from Peerless, and that it had refused to do so.

By its order it required Republic to make connection with the Peerless well; that Peerless should lay a line from its well to Republic's line at some point designated by Republic, in section 14, upon which the Peerless well was located; and that if it failed to make such connection and take gas from the Peerless well within a reasonable time after Peerless had constructed its line, as aforesaid, Republic should no longer be permitted to produce any of its wells located in the Hugoton gas field in Oklahoma. It required Republic and Peerless to determine and agree upon the terms and conditions of the taking of the gas of Peerless by Republic, and provided that in the event they could not reach an agreement they could make further application to the commission for an order fixing such terms and conditions, and the commission retained jurisdiction for that purpose.

Republic contends that the finding that it was a common purchaser of gas and the finding that it was a common carrier are erroneous and not supported by the evidence, since the evidence does not show that it holds itself out as a common carrier or common purchaser, **or had ever offered to purchase gas**

from, or carry gas for any other person or the public generally.

We think it unnecessary to pass upon this contention, since from the record it clearly appears, that the finding of the commission that 52 O. S. 1941 §§ 232 and 233, being sections 2 and 3 of ch. 198 of S. L. 1913, are applicable to the situation here involved, is fully sustained by the undisputed evidence, and we are of opinion that by said sections the commission was empowered to require Republic to take ratably from the Peerless well.

52 O. S. 1941 §§ 232 and 233 read as follows:

Section 232: "Any owner, or oil and gas lessee, of the surface, having the right to drill for gas shall have the right to sink a well to the natural gas underneath the same and to take gas therefrom until the gas under such surface is exhausted. In case other parties, having the right to drill into the common reservoir of gas, drill a well or wells into the same, then the amount of gas each owner may take therefrom shall be proportionate to the natural flow of his well or wells to the natural flow of the well or wells of such other owners of the same common source of supply of gas, such natural flow to be determined by any standard measurement at the beginning of each calendar month; provided, that not more than twenty-five per cent of the natural flow of any well shall be taken, unless for good cause shown, and upon notice and hearing the Corporation Commission may, by proper order, permit the taking of a greater amount. The drilling of a gas well or wells by any owner or lessee of the surface shall be regarded as reducing to possession his share of such gas as is shown by his well."

Section 233: "Any person, firm or corporation, taking gas from a gas field, except for purposes of developing a gas or oil field, and operating oil wells, and for the purpose of his own domestic use, shall take ratably from each owner of the gas in proportion to his interest in said gas, upon such terms as may be agreed upon between said owners and the party taking such, or in case they cannot agree at such a price and upon

such terms as may be fixed by the Corporation Commission after notice and hearing; provided, that each owner shall be required to deliver his gas to a common point of delivery on or adjacent to the surface overlying such gas."

So far as we have been able to find, this court has never been called upon to construe and apply the provisions of these sections. However, we have had occasion to consider similar situations under other conditions, and other statutes. Oklahoma Natural Gas Corporation v. Corporation Commission, 161 Okla. 104, 17 P. 2d 488; Quinton Relief Oil & Gas Co. v. Corporation Commission, 101 Okla. 164, 224 P. 156. The language of section 233 is plain and unambiguous. The evident purpose is to enforce ratable taking in accordance with the principles announced in Ohio Oil Co. v. Indiana, 177 U. S. 190, 44 L. Ed. 729, 20 Sup. Ct. 576. By the preceding section (52 O. S. 1941 § 232) ratable taking is defined as the proportion which the natural flow of gas from the wells of one producer bears to the amount of the natural flow from the wells of the other owners producing from the same common source of supply or common reservoir.

The evidence before the commission indisputably established that the gas taken from the Hugoton field by Republic was not taken for the purposes of developing a gas or oil field, or operating oil wells, or for its own domestic use, but was taken solely for the transportation and sale thereof to common purchasers and common carriers of gas in order that by such transportation and sale Republic might derive a profit, such profit being its sole source of income so far as the record discloses.

Republic does not contend that it is taking ratably from the Peerless well nor does it contend that its surrounding wells do not drain the Peerless well. It, in effect, concedes that it would be required to take ratably from the Peerless well if said section 233 was now in force and effect, but contends that the 1913 law, of which said section is a part, was superseded by S. L. 1915, ch. 197 (52 O. S. 1941 §§ 236-247).

Republic, in support of its contention that the 1913 Act was repealed and superseded by the 1915 Act, relies upon Application of Jackson, 179 Okla. 577, 66 P. 1101, and Sheridan Oil Co. v. Wall, 187 Okla. 398, 103 P. 2d 507. In Application of Jackson, supra, we held that section 1, art. 2, ch. 26, S. L. 1909, providing for the prevention of waste of natural gas by shutting in and confining the gas until such time as it could be utilized for light, fuel, or power purposes, was superseded by chapter 197, S. L. 1915, supra, for the reason that the latter act plainly showed that it was intended as a substitute for the prior act, but, in that case, we said that the repeal only affects those provisions shown to have been substituted by later and more comprehensive provisions, and that the remaining provisions of the 1909 Act could be construed in harmony with the 1915 Act to effect the intention of the Legislature on the subject of conservation.

In Sheridan Oil Co. v. Wall, supra, we held that section 11581, O. S. 1931, relating to the plugging of oil wells under the supervision of the Chief Mine Inspector, was superseded by section 3671, O. S. 1931, which granted to the Corporation Commission exclusive jurisdiction over the plugging of oil and gas wells. We there held that there was an irreconcilable conflict between the two sections and that the section vesting the power in the Corporation Commission being a later enactment, it was evident that the Legislature intended to confer upon the commission power and authority to supervise the plugging of oil and gas wells unhampered by the prior laws.

The decisions in the two cases cited do not support the contention of Republic. Examination of chapter 198, S. L. 1913, supra, discloses that it was enacted primarily to enforce ratable taking and protect correlative rights. Chapter 197, S. L. 1915, was enacted primarily for the prevention of waste, and authorizes the

commission to enforce ratable taking not only to prevent waste but to protect the interests of the public, and of all having the right to produce from a common source of supply. 52 O. S. 1941 § 239.

While the 1915 Act contains provisions regulating the ratable taking of gas from a common source of supply by persons engaged in the business of purchasing and selling gas and making such persons common purchasers, it is evident that the above quoted provisions of the 1913 law go further and require one who is engaged in the business of producing, transporting, and selling gas to take ratably from other producers from the same common reservoir who have no outlet for their production, regardless of whether the party so transporting and selling his own gas be a common carrier or common purchaser of gas from that reservoir.

In Champlin Refining Co. v. United States, 91 L. Ed. 9, 67 Sup. Ct. 1, the Supreme Court of the United States held that under section 19 (a) of the Interstate Commerce Act, the Interstate Commerce Commission could lawfully require the Champlin Refining Company to furnish information as provided in said section, although it was not a common carrier or common purchaser, but transported only its own products through its pipe line from one state to another. This holding by the Supreme Court was based upon a provision in the Interstate Commerce Act that the term common carrier as used therein included all pipe line companies. This case supports the contention of Peerless, upheld by the Corporation Commission, that the above-quoted sections of the 1913 Act extended the obligation to take ratably to include another class besides common purchasers and common carriers. No similar provision is contained in the 1915 Act, nor is such provision in irreconcilable conflict with anything therein contained.

It is also significant that both the 1913 Act and the 1915 Act were brought forward in the 1921 Statutes, the 1931 Statutes, and the 1941 Statutes, so that it is apparent that the Legislature in adopting the 1941 Statutes did not consider the 1913 law superseded by the 1915 law.

It follows that under section 3 of the 1913 law, above quoted, the commission could require the Republic to take gas ratably from the Peerless well, by ordering it to take from the Peerless well the same proportion of gas which it was taking from its own wells having substantially the same natural flow, or, in the alternative, desist from selling gas from its own producing wells.

In support of its contention that if the 1913 law was not superseded by the 1915 law, the 1913 law is unconstitutional as depriving it of its property without due process of law, Republic relies upon Texoma Natural Gas Co. v. Railroad Commission of Texas, 59 Fed. 2d 750, and Thompson v. Consolidated Gas Utilities Corp., 300 U. S. 55, 81 L. Ed. 510, but in each of those cases the Conservation Act stricken down as unconstitutional was enacted long after the parties who were there required to take gas from the wells of others had entered the state and made contracts for the production and purchase of natural gas. This fact distinguishes them from the instant case and, in our judgment, deprives them of controlling force.

In the instant case the record discloses that both the 1913 and 1915 Acts were enacted long prior to the time that Republic, a foreign corporation, obtained the privilege of conducting its business operations within the state, and engaged in such business and entered into its various contracts. Having entered this state and obtained the privilege of conducting its business operations therein when said laws were in full force and effect, it consented to be bound by such laws, and may not now complain that an order entered by the commission within the scope of such laws is unconstitutional. Pierce Oil Corporation v. Phoenix Refining Co., 259 U. S. 125, 66 L. Ed. 855, 42 Sup. Ct. 440.

In that case the Supreme Court, passing upon a similar contention, held:

"A claim so similar to the one we have here that the disposition of it should have been accepted as disposing of this case was dealt with by this court in Pipe Line Cases, 234 U. S. 548, 561, in a single sentence, saying: 'So far as the statute contemplates future pipe lines and prescribes conditions under which they may be established, there can be no doubt that it is valid.'

"There is nothing in the nature of such a constitutional right as is here asserted to prevent its being waived or the right to claim it barred, as other rights may be, by deliberate election or by conduct inconsistent with the assertion of such a right. Pierce v. Somerset Railway, 171 U. S. 641, 658; Wall v. Parrot Silver & Copper Co. 244 U. S. 407, 411."

Republic contends that the order invades the field of federal cognizance and interferes with and burdens commerce between the states, contrary to article 1, section 8 of the Federal Constitution, citing Texoma Natural Gas v. Railroad Commission of Texas, supra. Assuming, without deciding, that in some instances such an order might burden commerce between the states, there is here no showing that such effect will be produced by the order here appealed from. The evidence shows that Republic is delivering gas to a common purchaser within the State of Oklahoma. There is no showing that the order of the commission will in any way operate to restrict, hamper or interfere with any interstate operations of Republic, or that the order may not be complied with by operations conducted solely within the State of Oklahoma.

Republic asserts that the order made by the commission is arbitrary and beyond the jurisdiction of the commission, and that its effect is to require Republic to become a common purchaser of gas in the Hugoton field.

We think these assertions are not sustained either by the law or by the facts.

By 52 O. S. 1941 § 239, the Corporation Commission is given the right to regulate the taking of natural gas from any common source of supply so as to protect the interests of all those having the right to produce therefrom. This provision vested in the Corporation Commission power and authority to enforce ratable taking under the provisions of section 233, supra. The record shows that the commission had theretofore made a general order fixing allowables and governing the taking of gas from said field, and obviously the present order, made after notice and a full hearing, was for the purpose of correcting an inequality in the taking of gas from said field whereby the correlative rights of Peerless were being infringed. Under the evidence and the authority granted by section 233, supra, the order was justified, and was not an arbitrary act of the commission, nor beyond its power and jurisdiction.

Neither did the order require Republic to become a common purchaser, since it gave Republic a choice between taking the gas from Peerless and paying therefor direct, or marketing the gas and accounting to Peerless therefor, or to shut in its own production from the same common source of supply. It was left free to choose either of these three methods of correcting the inequality in taking and the consequent infringement of the correlative rights of Peerless.

The order of the commission is affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, CORN, GIBSON, and ARNOLD, JJ., concur.