Application of ARKANSAS LOUISIANA GAS COMPANY, a Domesticated Corporation, for an Adjustment in its Rates and Charges for Gas Utility Service in the State of Oklahoma.

The CORPORATION COMMISSION of the State of Oklahoma et al., Appellees,

v.

CITY OF BLACKWELL, Oklahoma, a Municipal Corporation, and Sun Oil Company of Pennsylvania, a Pennsylvania Corporation, Appellants.

No. 48066.

Supreme Court of Oklahoma.

Dec. 28, 1976.

William L. Anderson, Oklahoma City, for appellee, Arkansas-Louisiana Gas Co.

Jeff F. Raley, Blackwell, for appellant, City of Blackwell.

John A. Ladner, Tulsa, and C. Harold Thweatt, Richard C. Ford, of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellant, Sun Oil Co. of Pennsylvania.

IRWIN, Justice.

City of Blackwell and Sun Oil Company (appellants) challenge an order of the Corporation Commission of the State of Oklahoma (Commission). Appellants contend that Commission Order No. 108922, granting the rate increase, is invalid as a matter of law and unsupported by substantial evidence; the apportionment of the rate increase as between industrial and other customers is discriminatory and oppressive as to industrial customers; and Commission erroneously refused to grant appellants a continuance.

The establishment of rates and the apportionment thereof among various groups of customers is a legislative function of Commission. The permissible scope of review by this Court over orders of Commission is prescribed by Article IX, § 20, of the Constitution which provides, *"review by the Supreme Court shall not extend further than to determine whether Commission has regularly pursued its authority, and whether the findings and conclusions of Commission are sustained by the law and substantial evidence."* *Wiley v. Oklahoma Natural Gas Company,* Okl., 429 P. 2d 957 (1967).

Appellants contend initially that Order No. 108922 is void on its face for failure to determine a definite rate base and percentage of return. The Court's attention is called to a recent decision of this Court which reversed an order of Commission for failure to enter a factual finding of the rate base and a percentage rate of return. *Tecumseh Gas System, Inc. v. State,* Okl., 537 P.2d 421 (1975). The "rate base" is the capital structure upon which the utility should be permitted to make a profit. *"This amount is based upon actual appraisals of the Company properties, and no consideration is given to the number of shares of stock outstanding, or the value thereof."* *Application of Oklahoma Natural Gas Co.,* Okl., 406 P.2d 273 (1965).

In Order No. 108922, Commission entered a finding as to Arkla's rate base in the following terms:

*"The rates authorized by this Order will produce additional gross revenues of about $1,750,000; and will result in a rate of return of approximately 7.12% on Arkla's calculated rate base of $47,305,166; or a rate of return of 7.49% on the staff's fully adjusted rate base of $42,530,947. Due to the variables inherent in a rate base calculation, and whether all or some of the proposed adjustments to plant investment, income and expenses are adopted, the actual rate of return resulting from this Order will be in the neighborhood of 7.5% to 7.75% * * *."*

Recent opinion by this Court involving many of the same litigants upheld an order of Commission establishing the rate base in similar terms. *Arkansas Louisiana Gas Co. v. Sun Oil Co.,* Okl., 554 P.2d 14 (1976). We see no reason to disturb our holding therein.

Appellants seriously contest the existence of any need for Arkla's rate increase. A substantial portion of appellants' briefs are devoted to their suggested rate base for Arkla and the adequacy of the return presently enjoyed by Arkla using computations submitted by Arkla and

Commission's own staff. There is substantial evidence in the record to support Commission's finding as to the rate base and the need for a rate increase to provide an adequate return to Arkla on its capital investment.

Of equal importance to appellants is their argument directed to the increased rate burden placed on them as industrial and high volume consumers of Arkla's natural gas. Traditionally, Commission's rates set for Arkla and other utilities similarly situated have been on a declining rate schedule. Rate distribution under a declining rate schedule affords high volume users of natural gas cheaper rates as the customer uses more of the product. Order No. 108922 granted Arkla a rate increase and apportioned the largest part of that increase to the high volume rates charged industrials. While industrial consumers of natural gas from the Arkla system still enjoy a declining rate structure, the net result of Order No. 108922, and the stated purpose thereof, was to substantially close the gap between existing rates for high volume consumers and what would be a level or flat rate for gas to all customers regardless of the volume of gas consumed.

From the language of Order No. 108922, there appears to be essentially three reasons for adjusting rate structures to shift substantial portions of the rate increase to industrial and high volume customers: (1) a shift from traditionally accepted criteria for valuing utility service known as the "cost of service" rational to an "intrinsic value" of service rational, (2) a desire to protect residential rate payers from absorbing more than a fair proportional share of the rate increase, and (3) a desire to channel greater quantities of an admittedly dwindling resource to "human needs" uses such as home heating, hospitals, nursing homes, etc., thereby discouraging inefficient and wasteful over consumption of natural gas reserves where alternative fuels can be substituted.

At the request of appellants, Commission directed Arkla to prepare a cost of service study on its Oklahoma operations. The cost of service rationale of rate apportionment allocates rates on the basis of the rate of return on investment over and above the cost of providing service to the particular class of customers. Although figures vary with different approaches used by different authorities, the cost of service study prepared by Arkla demonstrated that under prevailing rates the company experiences a larger rate of return on its capital investment from service to industrial or high volume consumers than it derives from service to residential customers. This is because high volume consumers are usually serviced from a main line while residential consumers are serviced through numerous and expensive lateral connections. Under the most conservative statistical approach presented to Commission, Arkla enjoys a 12.9% return from sales of high volume industrial consumers and a 4.92% return from sales to residential consumers.

Commission, in its order, expressed substantial dissatisfaction with the cost of service rational and was of the opinion that cost of service no longer reflected economic realities as to the true value of service to the customers. Preference was set forth for what Commission termed the "intrinsic value" of service. Commission premises its intrinsic value rational on the theory that each unit of natural gas has the same energy value and the same economic value no matter how many units of gas a customer may purchase.

On at least one prior occasion, this Court has had cause to consider some aspects of Commission's shift in emphasis from cost of service to intrinsic value of service. *Arkansas Louisiana Gas Co. v. Sun Oil Co. of Pennsylvania, supra.* Therein Sun Oil argued the rates adopted by Commission were discriminatory as to it, a high volume industrial consumer, for the reason that cost of service was not given controlling effect. We recognized that Commission had rejected cost of service as the controlling principle in arriving at a

rate structure. However, we specifically noted that the order applied both principles [cost of service and intrinsic value] in arriving at a fair rate structure. We upheld that order.

The order in the case at bar states: " * * * *the Commission in recent years has given declining consideration to the cost of service principle in establishing rates for various classes of service, and has followed a policy of flattening the overall rate structure by gradually increasing the rate in higher usage brackets to bring the price of all gas sold more in line with the intrinsic value of the gas. We do not find in the evidence or in the cost study any compelling reason why we should now abandon that policy in order to give large volume industrial users of natural gas a significant price advantage over other classes of customers.*"

 Commission is not bound by a single formula or a combination of formulas in fixing rates and none is exclusive or more favored than the others. *Lone Star Gas Company v. Corporation Commission,* 170 Okl. 292, 39 P.2d 547 (1935). There is no precise statutory or court announced basis for determining the justness or reasonableness of class rate level structures or relationships, the Court generally holding that rate making is the responsibility of a regulatory commission effectively exercising its discretion upon sufficient evidence before it. *Arkansas Louisiana Gas Co. v. Sun Oil Co. of Pennsylvania, supra.*

Finally, appellants argue error on the part of Commission in its failure to grant appellants a continuance to study the Cost of Service Study prepared by Arkla. Appellants assert prejudice to them by reason of having only three days from receipt of the rather extensive study to time of hearing. Commission exercises judicial powers in addition to its legislative and administrative powers and functions. *Oklahoma Co. v. Common Carrier Division of Associated Motor Carriers of Oklahoma,* Okl., 405 P.2d 87 (1965). Commission,

when conducting hearings exercises authority and discretion similar to that of courts. It is the sound discretion of the court whether or not to grant a continuance and the refusal to do so is not error unless there is a clear showing of an abuse of discretion. *Teel v. Gates,* Okl., 482 P.2d 602 (1971). From examination of the record we find no abuse of discretion.

The findings and conclusions of Commission are sustained by the law and substantial evidence.

Affirmed.

All the Justices concur.