**SOUTHERN RESOURCES, INC.,**
**Appellant/Counter–Appellee,**

v.

**CONOCO, INC., Appellee/Counter–**
**Appellant,**

and

**The Oklahoma Corporation Commission,**
**Appellee/Counter–Appellee.**

**No. 78528.**

Court of Appeals of Oklahoma,
Division No. 1.

Feb. 8, 1994.

Martha L. Marshall and Stephen C. Cargill, Musser & Bunch, Oklahoma City, for appellant/counter-appellee.

Sharon Taylor Thomas, Hall, Estill, Hardwick, Gable, Golden & Nelson, Oklahoma City, for appellee/counter-appellant Conoco, Inc.

## MEMORANDUM OPINION

ADAMS, Judge:

Acting on an application filed by Conoco, Inc., the Oklahoma Corporation Commission (Commission) modified a prior Commission order and increased the disposal rate from 1,600 bpd to 7,500 bpd for a saltwater disposal well owned by Conoco located near a well operated by Southern Resources, Inc. (Southern). In its appeal, Southern claims the order is not supported by substantial evidence and impermissibly authorized a taking of its property for private use and violated its right to equal protection of the law. In its counter-appeal, Conoco claims the order is not supported by substantial evidence because the Commission did not increase the disposal rate to a level commensurate with the evidence.

### FACTS

Conoco is the operator of a saltwater disposal well known as the L.L. Chaffin No. 1 (LLC #1) located in the SW/4 NW/4 NW/4 of Section 2, Township 1 South, Range 2 East, Murray County, Oklahoma. By Order No. 107476, filed September 9, 1974, the

Commission authorized Conoco to dispose of saltwater at a volume not to exceed 1,600 bpd in the Third Bromide formation. On May 29, 1990, Conoco filed an application seeking to amend the prior order by increasing the maximum rate of saltwater disposal for the LLC # 1 to 12,000 bpd.[1]

Southern has been the operator of the Morrison–Quinn No. 1 Well (MQ # 1) located just 500 feet to the east of the LLC # 1 in the same section since 1988. The MQ # 1, drilled in 1983 and completed as an oil well from the Third Bromide formation, has produced more than 300,000 barrels of oil to date with approximately 200,000 barrels remaining to be produced. Southern filed a response objecting to Conoco's application and requested both denial of the application and prohibition of any further disposals. It claimed the increased disposal rate has caused and will likely cause a material decrease in the ultimate oil recovery and constitutes "waste" under 52 O.S.1991 § 86.2.

After six days of hearing between August and December of 1990, the initial Administrative Law Judge (ALJ) took the case under advisement and later filed his report on January 29, 1991. In that report, he recommended denial of the relief requested by Southern and approval of Conoco's application but only for an increase from 1,600 to 7,500 bpd. Conoco appealed under Commission rules. On April 12, 1991, an Appellate ALJ recommended reversal of the prior report and approval of an increase in the saltwater disposal rate to 12,000 bpd. On April 19, 1991, Southern appealed the latter report.

After a hearing on May 6, 1991, before the Commission *en banc*, Order No. 360453 was issued on October 2, 1991. The Commission approved the disposal rate of 7,500 bpd after finding that: (1) the overall mechanical integrity of the LLC # 1 supported the approval to increase, (2) the evidence did not demonstrate a significant impact had occurred to production of the MQ # 1, and (3) that Conoco's requested rate of 12,000 bpd was an arbitrary number, not supported by the evidence. The Commission further found that Southern's request for a complete prohibition of saltwater disposal in the LLC # 1 was not supported by the evidence and thus denied its requested relief.

## ANALYSIS

■ Conoco claims Southern waived any error of the Commission regarding the increase of the injection rate to 7,500 bpd by its failure to appeal the ALJ's initial report in which the same injection rate was recommended. Conoco cites *State ex rel. Cartwright v. Oklahoma Natural Gas Co.*, 640 P.2d 1341 (Okla.1982), for support, wherein the Court held:

> [m]atters which could have been presented before the Commission under rules governing proceedings before that body and which were not presented before the Commission either by affirmative evidence, objection or proceedings for review by the Commission are precluded from review by this court on appeal by a party who is adversary thereto.

Although an appeal was a "permissive" procedure when *Cartwright* was decided, Conoco points out that Rule 22(c) of the Oklahoma Corporation Commission Rules of Practice now requires that a written appeal must be filed within 10 days after the filing of the Initial Report. According to Conoco, Rule 16(d) requires waiver of any objection to a ruling or other action of the ALJ that is not included in such appeal.[2] Rule 16(d) provides:

> The Commission's denial of Conoco's application regarding the Collie James # 4 is not before us in this appeal.

1. Conoco is also the operator of another saltwater disposal well known as the Collie James # 4, located in the SW/4 NE/4 NE/4 of Section 3, Township 1 South, Range 2 East, Murray County, Oklahoma. Conoco also filed an application to increase saltwater disposal in this well from 7,500 bpd to 12,000 bpd. Southern also protested this application due to its injection into the Third Bromide formation and relative proximity to the Morrison–Quinn Well # 1. Apparently due to the common parties and issues, the Commission consolidated these two applications.

2. The Oklahoma Corporation Commission Rules of Practice were codified, effective December 31, 1991, as the Oklahoma Administrative Code (OAC). The new cites for Rule 16 and Rule 22 are OAC 165:5–13–2 and OAC 165:5–13–5, respectively.

An Administrative Law Judge shall exercise all of the powers of the Commission in the conduct of a cause. An Administrative Law Judge shall rule upon admission of evidence, and objections thereto, and upon any other motion or objection arising during the pendency of the cause until the issuance of the Report of the Administrative Law Judge, unless specifically set. Review of a ruling of an Administrative Law Judge shall be by appeal pursuant to Rule 22, and any objection to a ruling or other action of such Administrative Law Judge not included in such appeal and amendments thereto, shall be deemed to have been waived.

At the hearing on Conoco's appeal of the Initial Report, Southern argued for reversal of that report. Conoco raised the waiver issue, and the Appellate ALJ concluded on his report, "Since no appeal was filed challenging those findings of the ALJ [that an increase would not have a substantial impact on the MQ # 1], those findings must stand." Despite knowledge that Southern did not appeal the Initial Report, the Commission allowed Southern to argue for reversal of the Initial Report, and Southern argued for reinstatement of the Initial Report only as alternative relief. Moreover, the Commission's order specifically addressed and denied Southern's request for an end to disposals and did not treat that request as waived.

■ Even if Rule 16(d) is susceptible of Conoco's interpretation, it is equally susceptible of an interpretation which limits any waiver to procedural objections arising during the "conduct" of the cause. Based on this record, we must conclude the Commission opted for the latter construction, and we must give deference to that interpretation. See Bell v. Phillips Petroleum Company, 641 P.2d 1115 (Okla.1982). Southern's failure to formally appeal the ALJ's Initial Report does not prevent review of the issues raised in this appeal, particularly in light of the Cartwright Court's holding that issues must be presented "either by affirmative evidence, objection, or proceedings for review."

Apparently, because it claims its constitutional rights have been violated, Southern urges this Court to conduct a "thorough, probing, in-depth review of the record," as if to suggest an independent review of the evidence. Southern contends the order effectively takes its property for private use in violation of § 23 of Article 2 of the Oklahoma Constitution because the evidence reflects that the "increased disposal of water is substantially likely to damage or destroy the production" from the MQ # 1. However this evidence was disputed by Conoco on several occasions. Southern's asserted constitutional right has been violated only if its factual assertion is correct.

Southern also claims its testimony as to prospective damage based on present conditions was ignored while Conoco was granted prospective relief based on past conditions. Based on this, Southern argues it was denied equal protection because the order effectively creates a different burden of proof for "an operator of a producing well" than for "an operator of a disposal well." Although the Commission's order does reflect reliance on the absence of damage by past injections, as will be discussed below, the order is not premised solely on that evidence.

■ Each of Southern's constitutional arguments amounts to "an allegation of violation of ... constitutional principles by issuance of an order not supported by substantial evidence," and therefore "do not invoke an independent review of the evidence." Union Texas Petroleum v. Corporation Commission, 651 P.2d 652, 662 (Okla.1982). In determining whether there is substantial evidence in support of the Commission's findings and conclusions, we will review the whole of the evidence found in the record including evidence which fairly detracts from its weight. Cartwright, 640 P.2d at 1347.

■ In arguing that the Commission's order does not meet the substantial evidence test, Southern first points out that the Commission made no specific finding of a "substantial change of conditions" or that the increased saltwater disposal would not likely result in pollution, waste, or damage to Southern's rights. Although those precise findings are absent from the order, in its order the Commission did specifically rely on testimony from Conoco which minimized the

likelihood of damage from the increased disposal and specifically found that Conoco's application was based upon its "future plans for development in the area and the anticipated salt water production resulting from said development." Given the issues before it, the Commission's order is sufficiently specific to allow review and is not reversible merely because it lacks more formal findings. *See Cameron v. Corporation Commission,* 414 P.2d 266 (Okla.1966).

■ However, Southern still contends the order is not supported by substantial evidence that a change in conditions has occurred or that the order will prevent waste and properly protect the correlative rights of the parties. Applications for changes in orders authorizing saltwater injection wells are governed by Rule 3–308(c) of the Oil and Gas Rules of the Oklahoma Corporation Commission (OCC–OGR),[3] entitled *"Duration of underground injection well orders,"* which states, in pertinent part:

> (c) An order may be *modified,* vacated, amended, or terminated after notice and hearing if:
>
> > (1) There *is a substantial change of conditions* in the ... disposal well operation, or there are substantial changes in the information originally furnished. (Emphasis added.)

Southern contends the evidence is inconsistent with any finding that there has been a change in the disposal well operations or that the increased disposal can be accomplished without a substantial danger of damage to its well. However, Conoco produced evidence which, if believed, established that: (1) the injection well had not deteriorated since the prior order and was capable of accepting the increased rate, (2) the formation which was originally determined to have the capacity to accept saltwater disposal without detriment had not changed and was also capable of accepting the increased amounts, (3) no damage to the producing wells had occurred and

it was unlikely to occur due to the increased disposal rate, and (4) the requested modification was needed. By doing so, Conoco demonstrated that the modification would prevent "waste" and would not damage the fresh water strata and oil or gas bearing strata, thereby protecting the correlative rights of other parties. The record contains substantial evidence to support the Commission's order on the issues raised in Southern's appeal.

■ In its counter-appeal, Conoco argues the Commission based its partial relief, an increase to 7,500 bpd rather than the requested 12,000 bpd, on a misinterpretation of the evidence concerning its need. Although Conoco presented evidence that the injection of up to 12,000 bpd into the LLC # 1 would not harm the producing wells in the Third Bromide formation and that the well itself could handle the increased disposal, the LLC # 1 had maintenance work in 1983, resulting in a partial restriction of the annular space. The presence of the restriction, in conjunction with Conoco's testimony that 12,000 bpd was requested as an "estimate of extreme need" in case it had difficulty with its other disposal well and its admission that the well would probably reach its pressure limits of 1,300 psi before the volume of 12,000 bpd would ever be reached, supports the Commission's decision to allow increased disposal only at the lower rate. The record contains substantial evidence to support the Commission's order on the issues raised in Conoco's counter-appeal.

AFFIRMED

JONES, P.J., and HANSEN, J., concur.

---

**3.** Since codification in 1991, the new cite for OCC–OGR 3–308 is OAC 165:10–5–10.